[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15034
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cr-10012-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARIDAD RIOSECO ALEJANDREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 5, 2017)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Caridad Rioseco-Alejandrez appeals her 48-month

sentence for mail fraud in violation of 18 U.S.C. § 1341. Rioseco-Alejandrez, a

professional tax preparer and bookkeeper, filed fraudulent claims on behalf of herself and others with the Gulf Coast Claims Facility ("GCCF").  The GCCF was established by BP Exploration to administer, process, and settle claims relating to the Deepwater Horizon oil rig explosion and oil spill.  On appeal, Rioseco-Alejandrez argues that the district court erred in applying a two-point enhancement, pursuant to U.S.S.G. § 3B1.3, for her use of a "special skill" in committing or concealing the fraud offense.  Rioseco-Alejandrez argues that, due to her lack of formal education and training, she did not possess a "special skill" in the area of tax preparation, and, even if she did possess a "special skill," she contends that the district court clearly erred in determining that it "significantly facilitated" the commission or concealment of her offense.[1]

Pursuant to U.S.S.G. § 3B1.3, a defendant's offense level is increased by two levels if she used a special skill "in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G. § 3B1.3.  A special skill is defined as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing."  Id. cmt. n.4.  Enumerated

---

[1]We review de novo the district court's legal interpretation of the term "special skill" in U.S.S.G. § 3B1.3.  United States v. De La Cruz Suarez, 601 F.3d 1202, 1219 (11th Cir. 2010). We review for clear error the district court's factual determination that the defendant possessed a special skill.  Id.  There is no clear error in cases where the record supports the district court's findings.  United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002).

examples include pilots, lawyers, doctors, accountants, chemists, and demolition experts.  Id.

If an "average person off the street" does not possess the skill, then the skill is considered "special" for the purposes of applying the enhancement.  De La Cruz Suarez, 601 F.3d at 1219 (quotation marks omitted).  Further, a special skill requires neither licensing nor formal education.  United States v. Foster, 155 F.3d 1329, 1332 (11th Cir. 1998) (holding that "[a]lthough printing does not require licensing or formal education, it is a unique technical skill that clearly requires special training"); see also United States v. Malgoza, 2 F.3d. 1107, 1111 (11th Cir. 1993) (holding that "[a]lthough not every instance of radio operation requires skills not possessed by members of the general public, it is possible to develop expertise in that field that rises to the level of a special skill").

The district court did not err in determining that § 3B1.3's special skill enhancement could apply to an experienced professional tax preparer and bookkeeper who was not formally trained.  See Foster, 155 F.3d at 1332; Malgoza, 2 F.3d. at 1111.  Moreover, the district court did not clearly err in finding that Rioseco-Alejandrez possessed such a "special skill" within the meaning of U.S.S.G. § 3B1.3 or that her aptitude in tax preparation "significantly facilitated" the concealment of her offense.  De La Cruz Suarez, 601 F.3d at 1219.

A review of the record demonstrates that Rioseco-Alejandrez possessed tax preparation skills beyond those of the average person and that she used those skills in an attempt to commit and conceal her fraud offense.  See Petrie, 302 F.3d at 1290.  Though not formally educated or licensed, Rioseco-Alejandrez had developed expertise in the field during her twenty-five years of experience preparing tax documents for individuals and businesses and providing bookkeeping services.  What Rioseco-Alejandrez lacked in formal education, she compensated for through her years of experience and her receipt of a Paid Preparer Tax Identification Number from the IRS to prepare taxes on others' behalf, both of which separate her from the general public.

Using her special skill, Rioseco-Alejandrez fraudulently filed claims with GCCF for compensation of lost profits and earnings for herself, her father, and numerous unindicted coconspirators.  These claims included fraudulent supporting documentation, including handwritten letters claiming economic harm, and fraudulent federal income tax forms from 2008 and 2009, meant to demonstrate that the Deepwater Horizon incident had dramatically reduced the claimants' earnings.  Rioseco-Alejandrez's fraudulently filed claims resulted in an intended loss exceeding $500,000, but less than $1,500,000.

At sentencing, the government presented evidence that Rioseco-Alejandrez used her tax preparation knowledge to "reverse-engineer[]" the tax returns and

4

Schedule C forms she submitted to the GCCF and to the IRS.  Specifically, fraud analyst Robert Passero testified that Rioseco-Alejandrez's process for reverse engineering the forms included ensuring that the taxable income reported on the forms sent to the GCCF matched the taxable income on the returns that had been sent to the IRS, but changing the Schedule C values so that the claimant could show a loss for GCCF purposes, that was not reflected in the forms submitted to the IRS.  This type of doctoring of the documentation required Rioseco-Alejandrez to have knowledge of how the Schedule C values interacted with one another and with the bottom line of a claimant's taxable income.  As the district court noted, "there was some skill involved in figuring these out . . so . . . they don't get trapped immediately."

Finally the district court did not clearly err in finding that Rioseco-Alejandrez's aptitude in preparing taxes "significantly facilitated" the concealment of the offense because, as explained above, Rioseco-Alejandrez recognized that she could potentially avoid fraud detection by keeping the same taxable income value on the forms submitted to the GCCF and the IRS, even though the Schedule C values did not match.  Therefore, the record as a whole supports the district court's application of § 3B1.3's two-level special skill enhancement.

For these reasons, we affirm Rioseco-Alejandrez's 48-month sentence.

**AFFIRMED.**