[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-10500

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIAM MATEU,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:22-cr-10014-DPG-1

————————————————

Before ROSENBAUM, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

William Mateu appeals his sentence of 37 months' imprisonment for conspiracy to encourage and induce aliens to enter the United States. Mateu asserts the district court erred in applying a two-level special-skill enhancement to his offense level, pursuant to U.S.S.G. § 3B1.3, because his two-man crew required no special skill for navigation to travel from Florida to Cuba by boat in daylight and with a handheld GPS. He also contends his 37-month sentence, at the low end of his advisory Guidelines range, was substantively unreasonable because the district court ignored relevant 18 U.S.C. § 3553(a) factors, including his history and characteristics and the kinds of sentences available, and abused its discretion in refusing to grant a downward variance. After review,[1] we affirm.

## I.  SPECIAL-SKILL ENHANCEMENT

A two-level enhancement applies if the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. A "special skill" within the meaning

---

[1] We review the district court's legal interpretation of "special skill" *de novo*, but its factual finding that the defendant used such a skill only for clear error. *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1219 (11th Cir. 2010). We review the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard," considering the § 3553(a) factors and "the totality of the circumstances." *Gall v. United States*, 552 U.S. 38, 41, 51 (2007).

of § 3B1.3 is "a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing," such as "pilots, lawyers, doctors, accountants, chemists, and demolition experts." *Id.* § 3B1.3, comment. (n.4). A special skill does not necessarily require formal education, however. *United States v. Foster,* 155 F.3d 1329, 1331-32 (11th Cir. 1998). If an "average person off the street" does not possess the skill, then the skill is considered special for purposes of applying the enhancement. *United States v. Calderon*, 127 F.3d 1314, 1339-40 (11th Cir. 1997).

We have upheld enhancements under § 3B1.3 for defendants captaining vessels on the high seas on multiple occasions. *See, e.g.*, *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1219 (11th Cir. 2010); *Calderon*, 127 F.3d at 1339-40. In *Calderon*, we were asked to review the special-skill enhancement as applied to defendants who captained a 38-foot ship while smuggling cocaine from the Bahamas to Florida. 127 F.3d at 1323, 1339-40. After reviewing our precedent, we stated "we are convinced that captaining a vessel on the high seas is the type of activity that requires skills not possessed by members of the general public and, therefore, requires 'special skills' within the meaning of" § 3B1.3. *Id.* at 1339. Addressing the defendants' argument that piloting the boat only required "a few weeks training" from the U.S. Coast Guard (USCG) and a license, we explained "[t]he focus of the inquiry is on the skills members of the public possess generally, not what they could do after weeks of training." *Id.*

Likewise, in *De La Cruz Suarez*, we applied *Calderon* to defendants' migrant-smuggling operation between Cuba and the Florida Keys. 601 F.3d at 1211, 1219. One defendant had outrun a USCG vessel during a two-hour chase at night, in an overloaded boat, after the GPS and satellite phone were thrown overboard. *Id.* at 1219. We concluded "[t]he average person could not operate a vessel in this manner without the use of unique skills." *Id.* We noted, "[e]ven with the assistance of a GPS," before it was thrown overboard, that defendant had used "specialized knowledge of the area to find a predetermined location in Cuba to pick up the migrants." *Id.*

The district court did not clearly err in applying the special-skill enhancement under § 3B1.3 to Mateu. It applied binding circuit precedent holding that "captaining a ship on the high seas . . . requires skills not possessed by members of the general public." *Calderon*, 127 F.3d at 1339. Moreover, *De La Cruz Suarez* upholds a § 3B1.3 enhancement for a defendant who used GPS while navigating a vessel "to find a predetermined location in Cuba to pick up . . . migrants." *De La Cruz Suarez*, 601 F.3d at 1219. The district court did not clearly err in finding that (1) Mateu was operating the vessel when it was intercepted by the USCG; (2) Mateu was at least jointly responsible for operating the vessel on the way to Cuba and back; (3) Mateu had contemplated the need to depart or arrive after dark to escape detection; and (4) the general public lacked the skill to navigate a boat from the United States to a predetermined location in Cuba and back, even with modern technology. Detailed firsthand testimony from Officer Matthew James, who the district

court found credible, as well as timestamped and geotagged self-shot photos and Mateu's own concession supported the first two findings. The third was a proper inference, which Mateu agreed the district court could make, from established evidence of night vision goggles. Specific information in the record supported the fourth—the court at least implicitly accepted the Government's arguments that successful transit from the United States to Cuba and back "[wa]s no small feat," demanding that a pilot avoid cays and reefs and "make that treacherous crossing across the Gulfstream," and, thus, requiring the "special skill of open ocean navigation." The district court did not clearly err in reaching any of these findings. *See De La Cruz Suarez,* 601 F.3d at 1219. Therefore, we affirm the district court's application of the two-level special skill enhancement.

## II. REASONABLENESS

Under § 3553(a), the district court must impose a sentence "sufficient, but not greater than necessary," to comply with the traditional purposes of sentencing set forth in § 3553(a)(2), which includes the need for the sentence imposed to reflect the seriousness of the offense. 18 U.S.C. § 3553(a)(2)(A); *see also id.* § 3553(a)(2)(B)-(D) (enumerating the other sentencing purposes of deterrence, incapacitation, and rehabilitation). In determining the sentence to be imposed, the district court must also consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, and the applicable Guidelines range. *Id.* §§ 3553(a)(1), (3), (4).

A district court abuses its discretion and imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). A district court's refusal to grant a downward variance alone does not demonstrate that it failed to consider mitigating factors. *United States v. Lebowitz*, 676 F.3d 1000, 1016 (11th Cir. 2012). A district court's failure to discuss mitigating evidence also does not indicate it erroneously ignored or failed to consider the evidence, as an acknowledgement it has considered the § 3553(a) factors and the parties' arguments is sufficient. *United States v. Butler*, 39 F.4th 1349, 1356 (11th Cir. 2022). When pronouncing its sentence, the court need not "specifically mention every ground for variance" that the defendant has raised. *United States v. Whyte*, 928 F.3d 1317, 1339 (11th Cir. 2019) (brackets omitted).

The district court was required under § 3553(a) to consider the nature and circumstances of the offense, Mateu's history and characteristics, and the applicable Guidelines ranges and impose a sentence that reflected the seriousness of that offense. 18 U.S.C. § 3553(a)(1), (2)(A), (4). Regarding the nature, circumstances, and seriousness of the offense, the record shows Mateu brought a rifle, ammunition, and multiple magazines with him aboard the vessel and he fired multiple shots at the Cuban Border Guard officers pursuing him. It was within the court's discretion to conclude that either or both (1) its concern about the serious circumstances of the

offense, and (2) the Sentencing Commission's advice about the appropriate range of sentences, from 37 to 46 months' imprisonment, outweighed Mateu's proffered humanitarian reasons for traveling to Cuba, his immediate compliance with the USCG when they interdicted him, his professedly low risk of recidivism, and his desire to avoid adverse immigration consequences from the disposition of this case. However, it had discretion to place "great weight" on one of those factors over the others. *See Butler*, 39 F.4th at 1355 (stating the district court may "attach great weight to one § 3553(a) factor over others," and we will not "second guess" that weight, "so long as the sentence is reasonable under the circumstances").

Mateu's 37-month sentence, at the bottom of his Guidelines range, is reasonable. *See United States v. Coglianese*, 34 F.4th 1002, 1009 (11th Cir. 2022) (stating we ordinarily expect, though we do not presume, sentences within the Guidelines range to be reasonable). Mateu's 10-year statutory maximum was more than triple that length. *See* 8 U.S.C. § 1324(a)(1)(B)(i); *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014) (stating a sentence well below the statutory maximum is an indicator of a reasonable sentence). Even if Mateu's requested 364-day sentence would also have been permissible, the sentence the district court imposed was not outside the range of reasonable sentences. *See Irey*, 612 F.3d at 1190 (explaining we will vacate a sentence "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case"). Therefore, because the district

court did not abuse its discretion by ignoring any relevant factors, giving significant weight to any irrelevant factors, or weighing the factors unreasonably, the sentence is substantively reasonable.

**AFFIRMED.**